UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES ROBINSON,                          Case No. 13-11637

        Plaintiff,                      Patrick J. Duggan
v.                                         United States District Judge

COMMISSIONER OF SOCIAL SECURITY,           Michael Hluchaniuk
                                           United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On April 11, 2013, plaintiff Charles Robinson filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 11).

### B.  Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance

benefits (DIB) and supplemental security income (SSI) on August 24, 2011, alleging that he became disabled on May 5, 2009. (Dkt. 7-5, Pg ID 147-54). The claims were initially disapproved by the Commissioner on December 20, 2011. (Dkt. 7-3, Pg ID 100-01). Plaintiff requested a hearing and on September 24, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Melody Paige, who considered the case de novo. (Dkt. 7-2, Pg ID 46-71). In a decision dated December 28, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 31-40). Plaintiff requested a review of this decision on January 15, 2013. (Dkt. 7-2, Pg ID 28-30). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 16, 2013, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 22-24); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born in 1967, was 41 years of age on the alleged disability onset date and 44 years old at the date last insured, September 30, 2011. (Dkt. 7-2, Pg

ID 73).  Plaintiff had past relevant work experience as a stock clerk, janitor and phone solicitor.  (Dkt. 7-2, Pg ID 39, 212).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Dkt. 7-2, Pg ID 36).  At step two, the ALJ found that plaintiff's lumbar disc disease and hypertension were "severe" within the meaning of the second sequential step, and that plaintiff's HIV and depression were not severe, noting his HIV and depression were stable with treatment and also noting that his blood pressure was better controlled when he became compliant with his medication.  (Dkt. 7-2, Pg ID 36-39).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 38).

The ALJ determined that plaintiff has the residual functional capacity ("RFC") "to perform simple, unskilled sedentary exertional work as defined in 20 CFR 404.1567(a) and 416.967(a) with few changes in work routine and no fast-paced production."  (Dkt. 7-2, Pg ID 38-39).  At step four, the ALJ found that plaintiff was unable to perform his past relevant work, given his RFC.  (Dkt. 7-2, Pg ID 39).  At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy, including bench assembler, hand packager and security monitor.  (Dkt. 7-2, Pg ID 39-40).

**B.      Plaintiff's Claims of Error**

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's severe impairments under Step Two and Three of the sequential process.  According to plaintiff, the ALJ failed to evaluate whether plaintiff's HIV status would meet the listings (Listing 14.00 and 14.08), whether his mental impairments would meet the listings (Listing 12.00), and whether his lumbar disc disease and sciatic back pain would meet the listings (Listing 1.00).  (Tr. 18).  Plaintiff contends that when considering presumptive disability at Step Three, the ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review.  *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011).  Plaintiff argues that the ALJ here merely makes a conclusory statement that plaintiff does not meet the listings, stating: "The record does not contain the requisite clinical and objective findings that would meet or equal any Listing in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 18).  Plaintiff asserts that there is no further discussion by the ALJ as to why plaintiff would not meet the listings.  Plaintiff argues that the lack of rationale and explanation is astounding considering his severe impairments.

Plaintiff further contends that the ALJ does not evaluate any current treatment with regard to his HIV infection, but instead simply cherry-picks the

medical records looking for non-relevant medical records to substantiate her decision, and that the ALJ does not give any rationale for her decision, only conclusory statements.  For example, under Step Two, the ALJ attempts to justify her rejection of HIV, diverticulitis, and mental impairments as severe impairments by cherry picking consultative examinations and select medical records.  (Tr. 16-18).  Plaintiff argues, however, that the conclusory statements by the ALJ are not accurate.  Plaintiff states that the ALJ never mentions that plaintiff was diagnosed with sigmoid diverticulitis through a CAT scan (Tr. 207, 251-253, 255-256), and that the ALJ never evaluates plaintiff's severe back impairments, including his large paracentral disc extrusion causing severe compression of the descending right S1 nerve roots as described in an MRI.  (Tr. 258-59).  Plaintiff continues that the ALJ mentions the MRI but simply characterizes the back impairments as "lumbar disc disease."  (Tr. 17).  The ALJ never mentions the treatment for plaintiff's back pain and the treatment notes that his back pain is "worse with movement."  (Tr. 393).  Plaintiff further argues that the ALJ rejects plaintiff's severe depressive disorder and never evaluates his mental impairments.  Instead, the ALJ, in one conclusory statement, states that the depression is "stable with treatment."  (Tr. 18).  Plaintiff notes that the ALJ made this statement despite treating psychiatrist Dr. Timothy Chapman's assessment that plaintiff has sadness, loss of interest, insomnia, and loss of appetite.  (Tr. 262, 503).  Plaintiff reports

that he has a long history of childhood sexual and emotional abuse, but there is no discussion by the ALJ of plaintiff's symptoms or treatment. Plaintiff further asserts that the ALJ rejects his HIV status because his CD4 count was 798 (Tr. 17), and that the ALJ failed to discuss any other aspects of plaintiff's HIV status, including his recurrent rashes and abscesses, in rejecting HIV as a severe impairment. According to plaintiff, there is no discussion of any relevant objective medical evidence in the decision, no discussion of the factual basis for the decision, and not a single discussion in the decision of special factors such as medication side effects and the severe pain plaintiff suffers. Plaintiff argues that his HIV medications cause serious and substantial side effects that is ignored by the ALJ, and that the ALJ's entire decision is conclusory and her lack of detail at steps two and three constitute substantial error.

Plaintiff also argues that the ALJ erred in evaluating plaintiff's credibility. According to plaintiff, the ALJ never discusses her reasoning in the decision to reject plaintiff's credibility. Instead, the ALJ simply makes conclusory statements using boilerplate language in her decision, stating "... the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." (Tr. 18). Plaintiff contends that the ALJ depends on the boilerplate language as a substitute for analysis of the factors set out in 20 C.F.R. § 404.1529(c)(3), and that the ALJ never identifies the testimony she found not to

6

be credible, nor does she discuss the reasons she found the testimony not credible.

According to plaintiff, the ALJ states that plaintiff has "mild" restrictions in

activities of daily activities, social functioning, and concentration, persistence, or

pace (Tr. 18-19), but makes no effort to discuss or explain why she has concluded

that plaintiff only has mild limitations.  Plaintiff contends the ALJ never discusses

side effects of plaintiff's medications, including severe fatigue and diarrhea that

plaintiff testified to at the hearing, and although the ALJ recites plaintiff's

testimony and medical records, she fails to state a reason for not finding plaintiff

credible.  (Tr. 18, 19).  Instead, the ALJ makes broad conclusory statements with

absolutely no citations to the record nor testimony that would lend her opinion as

credible.  For example, the ALJ states that plaintiff's sciatic back pain is not

"corroborated by the record," and that there is "improvement with conservative

therapy."  (Tr. 19).  Plaintiff argues to the contrary that there is an MRI

corroborating the plaintiff's severe back pain, numerous emergency room visits,

and medication therapy, and that the ALJ fails to point to records supporting his

finding of "improvement with conservative therapy."  Plaintiff finally argues that

there is no discussion by the ALJ of the specific credibility factors in any

meaningful way as to explain her conclusions.  The ALJ never discusses plaintiff's

testimony that he needs to lie down throughout the day, is unable to lift his arms

above his head without pain, suffers medication side effects including nausea and

headaches, anxiety and concentration difficulty, memory and forgetfulness problems, and severe diarrhea from diverticulitis. (Tr. 37-39, 43-45). Plaintiff concludes that there is overwhelming evidence in the record that documents his inability to work from a physical and emotional standpoint, and that this case should be reversed for payment of benefits.

### C.   The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ did not err in failing to discuss whether plaintiff's non-severe impairments met or medically equaled a listing. According to the Commissioner, plaintiff argues that the ALJ erred in not discussing at step three of the sequential evaluation process whether several of his conditions, including diverticulosis, depression, and HIV met or medically equaled the criteria of an impairment included in the Listing of Impairments. The Commissioner argues that it was entirely reasonable for the ALJ to not discuss whether those conditions met or equaled the criteria of a Listing because the ALJ appropriately found that they were not even severe impairments. (Tr. 16-18). And, given that plaintiff's depression and HIV were not severe impairments, it was reasonable for the ALJ to not directly address at step three whether they were so severe that they were disabling without considering any other factors.

The Commissioner asserts that plaintiff makes a skeletal argument that the ALJ did not fully consider the evidence in finding that his HIV and depression

8

were not severe impairments.  The Commissioner responds that, to the contrary, the ALJ provided good reasons why neither condition was particularly limiting. (Tr. 16-19).  The ALJ acknowledged that plaintiff had HIV, but noted that the condition was stable, his laboratory test results were in the normal range, and he had no infections or manifestations from the condition.  (Tr. 18).  Indeed, treatment providers noted on several occasions that plaintiff was asymptomatic and never stated that plaintiff had infections or manifestations of symptoms due to HIV.  (Tr. 400, 404, 407, 412-13).  The Commissioner acknowledges that plaintiff claims that he had recurrent rashes and abscesses due to HIV, but asserts that nothing in the treatment notes indicates that plaintiff's rashes or abscesses were actually related to that condition.

The Commissioner further asserts that plaintiff incorrectly claims that the ALJ did not evaluate his mental impairments. The Commissioner contends that to the contrary, the ALJ fully considered plaintiff's depression, but found that it was not severe.  Specifically, the ALJ found that plaintiff's depression was stable with treatment and made explicit findings regarding whether it was a severe impairment.  (Tr. 18-19).  In making her finding, the ALJ applied the so-called special technique, which requires that an ALJ initially rate the degree of functional loss resulting from a claimant's mental impairment in four broad areas of functioning: activities of daily living; social functioning; concentration,

9

persistence, or pace; and episodes of decompensation.  (Tr. 18-19); *see* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the ALJ rates the degree of the claimant's limitations in the first three categories as "none" or "mild," and "none" in the fourth area, the adjudicator will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Here, the ALJ found that plaintiff had mild limitations in the first three categories and no episodes of decompensation.  (Tr. 19).  Pursuant to the regulations, plaintiff did not have a severe mental impairment given the ALJ's findings.  Although plaintiff criticizes the level of detail the ALJ provided in making this finding, he fails to demonstrate that the ALJ's conclusions were faulty.

The Commissioner further asserts that plaintiff correctly notes that the ALJ did not mention his diverticulosis, including whether it was a severe impairment or whether the condition met or equaled a Listing.  The Commissioner argues that this was reasonable, however, because the record contained little or no evidence regarding that condition during the period at issue.  According to the Commissioner, the only significant evidence in the record concerning plaintiff's diverticulosis was a CT scan showing that condition in December 2008.  (Tr. 209). However, plaintiff did not allege that he was disabled until May 2009 (Tr. 124-

10

33), and there is no indication that plaintiff's diverticulosis continued after December 2008 and no evidence that plaintiff received treatment for diverticulosis on or after his alleged onset of disability date. The Commissioner argues there was, therefore, no reason for the ALJ to find it to be a severe impairment or determine whether it satisfied a Listing.

The Commissioner also argues that plaintiff fails to show that the ALJ committed reversible error in not providing a more detailed discussion as to why his back impairment did not meet or medically equal a listed impairment. According to the Commissioner, the ALJ found that plaintiff's lumbar spine condition was a severe impairment, but determined that none of his impairments met or equaled the criteria of a Listing. (Tr. 16-18). Plaintiff claims that the ALJ committed reversible error because she did not provide sufficient detail in her decision concerning why plaintiff's spine condition did not satisfy a Listing. The Commissioner asserts that although the ALJ's decision may have lacked detail, plaintiff fails to show that the ALJ committed reversible error. Rather, plaintiff supports his argument that a remand is required in this case by referring to *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411 (6th Cir. 2011). In *Reynolds*, the court held that the ALJ erred by finding that Reynolds' musculoskeletal condition did not satisfy Listing 1.00 without making an analysis of Reynolds' physical condition in relation to the Listing. *Id*. at 416. However,

11

*Reynolds* suggests that an error in articulation at step three could be deemed harmless. In relevant part, the court stated that "[t]he ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id*. (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Significantly, the court also stated that "[a]dditionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing." *Id*. The Commissioner contends that despite his argument to the contrary, the evidence plaintiff puts forth does not approach what is necessary to satisfy any Listing. Any articulation error by the ALJ should be deemed harmless. The Commissioner argues that plaintiff never identifies precisely which Listing he believes he satisfied, although he refers to the general Listing for musculoskeletal impairments, Listing 1.00. The Commissioner asserts, presumably, plaintiff believes that he met or equaled Listing 1.04A, because that Listing pertains to disorders of the spine with evidence of nerve root compression. As an initial matter, the Commissioner contends that plaintiff's argument should be rejected because he makes no effort of any kind to show that his condition matched the criteria of the Listing. *See Roby v. Comm'r. of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) ("The claimant has the burden at the third step of the sequential

evaluation to establish that he meets or equals a listed impairment") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).  The Commissioner argues that despite the lack of detail in the ALJ's step three finding, plaintiff fails to show that the ALJ committed anything more than harmless error because he does not put forth evidence that could possibly serve to satisfy the Listing.  Indeed, the Commissioner continues, the record evidence could not possibly support such a conclusion.  According to the Commissioner, the criteria of Listing 1.04 are met if a claimant has a disorder of the spine resulting in compromise of a nerve root or the spinal cord, and if the disorder also meets the requirements of one of three categories.  Listing 1.04A requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spine motion, motor loss (weakness or atrophy with weakness) accompanied by sensory or reflex loss, and positive straight-leg raising tests.  The Commissioner argues that a remand for the ALJ to discuss why plaintiff did not satisfy Listing 1.04A would be a useless formality because the record simply does not contain evidence that would satisfy all of Listing 1.04A.  Moreover, the ALJ discusses the fact that plaintiff had normal findings that bear directly on Listing 1.04A.  For example, the Listing requires that a claimant display motor and sensory or reflex loss, and the ALJ stated that during a May 2010 examination, plaintiff had normal lower extremity strength and sensation.  (Tr. 17, 223).  The ALJ also noted that

Dr. Shaw, who examined plaintiff in November 2011, found no motor or sensory deficits (Tr. 18, 270), and the ALJ accurately stated that plaintiff's treatment notes through May 2012 reflected that plaintiff had intact sensation and motor strength. (Tr. 17, 285, 289, 291). Indeed, the Commissioner continues, there was apparently no clinical evidence that plaintiff had the motor and sensory deficits required to satisfy the Listing.

The Commissioner further notes that, although not discussed by the ALJ, the record contains an opinion from Dr. Michael Parish, a physician who reviewed plaintiff's medical records, that directly bears on whether plaintiff's conditions met or equaled a Listing. (Tr. 59). Dr. Parish discussed evidence pertaining to both plaintiff's physical and mental conditions and opined that there was "no evidence that he [could] meet or equal a listing." (Tr. 59). The Commissioner concludes that although the ALJ may not have provided an extensive discussion of whether plaintiff's spine condition met or equaled a Listing, any error in that regard should be deemed harmless because plaintiff has not identified evidence that could satisfy every element of the Listing and the record contains no such evidence. *See Sullivan v. Zebely*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original).

The Commissioner also argues that substantial evidence supports the ALJ's

14

finding that plaintiff was not entirely credible.  According to the Commissioner, in

assessing plaintiff's residual functional capacity, the ALJ determined that although

plaintiff's medically determinable impairments could reasonably be expected to

cause his alleged symptoms, his statements concerning the intensity, persistence,

and limiting effects of those symptoms were not fully credible.  (Tr. 18).  As

explained in *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir.

2003) "an ALJ is not required to accept a claimant's subjective complaints and

may properly consider the credibility of a claimant when making a determination

of disability."  The Commissioner argues that contrary to plaintiff's contention

that the ALJ provided no rationale for her credibility determination, the ALJ

provided several reasons for her conclusions.  (Tr. 19).  For example, the ALJ

found that plaintiff's back pain was not corroborated by the record, his depression

and HIV were stable with treatment, the evidence did not support his claim of

debilitating medication side effects, and his testimony regarding his daily activities

conflicted with his statements to a consultative examiner.  The Commissioner

contends therefore that substantial evidence supports the ALJ's credibility

assessment.  Specifically, the ALJ found that, although there was objective

evidence of nerve root compromise, plaintiff's lower back pain responded to

medication and Dr. Shaw's physical examination findings were unremarkable.

(Tr. 18).  Indeed, the Commissioner continues, although plaintiff sought treatment

for his back pain on many occasions, he never received more than conservative

treatment, which was somewhat effective, and examination findings were largely

normal.  For example, in August 2010, plaintiff was examined by Dr. Hornyak, a

neurologist, who found that although plaintiff had a lumbar disc herniation, his

pain was "not severe" and plaintiff had not tried conservative management

strategies.  (Tr. 291).  In April and September 2011, Dr. Sklar continued to

recommend conservative treatment.  (Tr. 192-93, 195-96).  Dr. Shaw examined

plaintiff in November 2011 and found no musculoskeletal or neurological

abnormalities.  (Tr. 270-71).  Dr. Shaw opined that plaintiff could work eight

hours a day and could sit, stand, walk, bend, and lift 10 pounds without difficulty,

which was compatible with the ALJ's residual functional capacity finding.  (Tr.

18, 271).  In December 2011, a doctor noted that plaintiff's back pain was well-

controlled.  (Tr. 326-27).  Plaintiff presented to the emergency room in February

2012 with complaints of extreme back pain, but he was unremarkable on

examination and was prescribed only an anti-inflammatory drug.  (Tr. 285).  In

May 2012, plaintiff presented to Dr. Hornyak again, but he was only referred for

physical therapy and pain management.  (Tr. 289).  The Commissioner concludes,

therefore, that substantial evidence supports the ALJ's finding that plaintiff's

spine condition was not as limiting as plaintiff claimed.  (Tr. 18-19).

The Commissioner further argues that the ALJ reasonably found that

plaintiff's HIV and depression were stable with treatment. (Tr. 19). As discussed above, the Commissioner asserts that there was no evidence that plaintiff's HIV was symptomatic. Similarly, plaintiff often presented to his therapist with a depressed mood, but had other normal findings, such as average concentration, good insight, and intact judgment. (Tr. 501-02, 505-06, 519-20, 521-22, 523-26, 529-30). In July 2012, plaintiff stated that he was doing well and that his medication was "okay." (Tr. 530). The Commissioner contends that substantial evidence therefore supports the ALJ's finding that plaintiff's HIV and depression were stable with appropriate treatment. (Tr. 19).

The Commissioner also argues that the ALJ reasonably found that the record evidence did not comport with the alleged debilitating medication side effects. (Tr. 19). According to the Commissioner, plaintiff does not attempt to undermine this finding. Indeed, he fails to recognize that the ALJ considered his alleged medication side effects at all. The Commissioner also contends that the ALJ properly discounted plaintiff's credibility because his testimony that he was extremely limited in performing daily activities conflicted with the other record evidence. (Tr. 19). Plaintiff testified that he did not perform any household chores (Tr. 37); however plaintiff reported during a consultative examination that he did a fair job with housekeeping, washed laundry, shopped, cooked simple meals, and completed errands. (Tr. 277). The Commissioner asserts that the ALJ

17

reasonably found that this inconsistency diminished plaintiff's credibility.  (Tr.

37).  The Commissioner concludes therefore that substantial evidence supports the

ALJ's finding that plaintiff's allegations were less than fully credible.

The Commissioner acknowledges that plaintiff lists several facts that he

believes the ALJ did not consider and claims that the ALJ did not discuss any of

the factors found at 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The

Commissioner argues that, with respect to many of the facts and elements of the

regulation, plaintiff is simply incorrect in stating that the ALJ did not address

them.  For example, plaintiff claims that the ALJ did not discuss his medication

side effects, which, as shown above, is untrue.  (Tr. 19).  Regardless, the

Commissioner continues, even if the ALJ did not address all of the matters

plaintiff describes, it would not be error because an ALJ's credibility

determination need only be "sufficiently specific to make clear to the individual

and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."  SSR 96-7p; *Rogers v.

Comm'r. of Soc. Sec*., 486 F.3d 234, 248 (6th Cir. 2007).  According to the

Commissioner, plaintiff fails to identify any error in the ALJ's credibility

determination.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

21

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

2:13-cv-11637-PJD-MJH   Doc # 12   Filed 06/30/14   Pg 24 of 46   Pg ID 641

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    **Analysis and Conclusions**

1.    **Step II Analysis**

Here the ALJ found that plaintiff's lumbar disc disease and hypertension were severe impairments, but that his HIV and depression were not severe.  (Tr. 16-19).  Plaintiff argues that the ALJ erred by failing to find that his HIV, depression and diverticulitis were severe impairments.  He further complains that the ALJ's error was compounded because he did not consider these impairments at step three of the sequential evaluation.  It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation.  *See, e.g., Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The purpose of step two is "to screen out totally groundless claims."  *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009).  If the ALJ continues with the remaining steps, any error at step two is harmless.  Because the ALJ here found the existence of severe impairments, and thus continued to the remaining steps of the sequential evaluation, any error at step two in failing to find plaintiff's depression, HIV and diverticulitis as severe is harmless.

In any event, the undersigned suggests that substantial evidence supports

the ALJ's decision.  Plaintiff complains that the ALJ never mentioned that he was diagnosed with sigmoid diverticulitis.  As the Commissioner correctly notes, however, the record shows that plaintiff was diagnosed with diverticulitis one time in December 2008, prior to plaintiff's alleged disability onset date of May 2009. (Tr. 207).  It is well settled that mere diagnosis of an impairment says nothing about its severity.  *See Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").  Further, plaintiff has failed to present any evidence that this impairment continued after December 2008, or otherwise lasted more than twelve months or that it interfered with plaintiff's ability to complete basic work activity.  And, the ALJ did not err in failing to discuss the diagnosis of diverticulitis because "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  Accordingly the ALJ did not err in not finding that this constituted a severe impairment.

And, the ALJ explained that plaintiff's HIV was stable and plaintiff has not

26

presented any evidence to the contrary.  Namely, the evidence in the record

indicates that plaintiff's HIV was asymptomatic, his condition was stable, and his

laboratory test results were in the normal range.  (Tr. 193, 308, 400, 404, 406-07,

412-13, 416).  Although plaintiff now complains that he had rashes and abscesses

related to his condition, there is no evidence in the record that these two isolated

events were related to plaintiff's HIV.  (Tr. 195, 381).  As such, plaintiff has failed

to establish that his HIV limits any basic work activity, and the ALJ's conclusion

that this condition is non-severe is supported by substantial evidence. *See Hudson*

*v. Comm'r of Soc. Sec.*, 2013 WL 5372801, at *6 (E.D. Mich. Sept. 25, 2013)

(substantial evidence supported ALJ's conclusion that her HIV was not severe

because plaintiff was continually and repeatedly diagnosed as asymptomatic over

the course of several years).

Plaintiff also complains that the ALJ never evaluated plaintiff's mental

impairments.  However, to the contrary, the ALJ expressly found that plaintiff's

depression was not severe, stating:

> Mentally, the claimant is depressed from a history of
> childhood trauma and HIV, but again, his psychiatric
> condition is stable with treatment.  He is well oriented to
> reality with average memory and cognition.  He is not
> psychotic or suicidal.  The consultative psychologist
> found that he was quite functional as he was living by
> himself, cooking meals, doing chores, paying bills, and
> making medical appointments.  The GAF scores in the
> record of 54 and 58 are not completely disabling, and it

27

was indicated that he can carry out simple, routine tasks
(Exhibits 2F, 4F, 10F). With respect to the "B" criteria
of the Listings, his depression is basically secondary to
his physical problems and causes only a mild restriction
in activities of daily living, and mild difficulties in
maintaining social functioning and concentration,
persistence, or pace, and no episodes of decompensation
of extended duration. Therefore, the undersigned
concludes that his mental disorder is not severe within
the meaning of the Social Security Act.

(Tr. 19).[1] In making this finding, the ALJ relied on the consultative psychological

examination and plaintiff's treatment notes. (Tr. 17-19, 260-79, 495-530).[2] The

ALJ's RFC analysis is consistent with the reviewing psychologist's assessment

---

[1] The regulations provide that the Commissioner will generally conclude a claimant's impairments are not severe if mild limitations are found in the three areas addressed by the ALJ, and the claimant had no extended episodes of deterioration or decompensation. 20 C.F.R. §§ 1520a(d)(1), 416.920(d)(1).

[2] The undersigned notes that the ALJ did not discuss the Psychiatric Review Technique Form (PRTF) completed by the reviewing psychologist in this case, Michele Leno, Ph.D., which concluded that plaintiff has a severe mental impairment, and that his depression causes a mild restriction in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, but that simple work activity was not precluded. (Tr. 72). However, Dr. Leno is not a treating physician, and thus the ALJ was not required to give that opinion controlling weight under 20 C.F.R. § 404.1527(c)(2). *See Kornecky*, 167 Fed. Appx. at 508-09. Moreover, Dr. Leno's PRTF does not support a finding that plaintiff would meet or equal Listing 12.04. Because this is not a case where the ALJ failed to engage in the evaluation of plaintiff's mental impairment or complete the "special technique," and because it appears that, despite finding plaintiff's depression to be "non-severe," the ALJ nevertheless considered plaintiff's mental impairment in formulating the RFC here, as the ALJ limited plaintiff to "simple unskilled sedentary exertional work . . . with few changes in work routine and no fast-paced production," (Tr. 38), any error in not expressly discussing the PRTF completed by the reviewing physician is harmless. *See Corcoran v. Astrue*, 2009 WL 3100350, at *21 (D. Md. Sept. 22, 2009) (the ALJ's failure to discuss the PRTF assessment constituted, at most, harmless error because it did not affect her finding as to the RFC) (citing *Underwood v. Astrue*, 2008 WL 4546720, at *21 (W.D. Va. Oct. 10, 2008) ("[The ALJ's] failure to thoroughly discuss the July 29, 2005, PRTF constitutes harmless error at best, as it did not prohibit this court from determining whether the ALJ's findings were supported by substantial evidence.")).

that "simple work activity is not precluded" (Tr. 72), and plaintiff has failed to demonstrate that his depression causes any additional limitations affecting his ability to work. Thus, while the ALJ could have done a more thorough job analyzing plaintiff's mental impairment, because she did consider this impairment in formulating plaintiff's RFC, failure to consider plaintiff's depression a "severe" impairment is, at most, harmless error. *See Robinson v. Barnhart*, 124 Fed. Appx. 405, 411 (6th Cir. 2005) ("The ALJ's failure to complete a [PRTF] can constitute reversible error, . . . but in the Sixth Circuit, reversal is warranted only if the plaintiff shows 'significant evidence of a possible impairment that allegedly prevented the Plaintiff from working.'").

## 2.    Step Three Analysis

Plaintiff also complains that the ALJ's Step III analysis is flawed. Specifically, plaintiff argues that the ALJ failed to properly evaluate whether plaintiff's HIV, mental impairments and lumbar disc disease would meet the listings. The ALJ's entire Step Three finding consists of the following statement: "The record does not contain the requisite clinical and objective findings that would meet or equal any Listings in Appendix I, Subpart P, Regulations No. 4." (Tr. 18). Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6

29

(E.D. Mich. June 18, 2012).  When considering presumptive disability at Step

Three, "an ALJ must analyze the claimant's impairments in relation to the Listed

Impairments and must give a reasoned explanation of his findings and conclusions

in order to facilitate meaningful review."  *Id.* (citing *Reynolds v. Comm'r of Soc.

Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  An ALJ's failure to sufficiently

articulate his Step Three findings is error.  *See M.G. v. Comm'r of Soc. Sec.*, 861

F. Supp.2d 846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at

416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012)

(discussing reversal in a series of cases where the ALJ "made only a blanket

statement that the claimant did not meet or equal a Listing section").  For example,

in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich.

May 20, 2013), plaintiff argued that the ALJ erred in failing to consider whether

her cervical and lumbar spine impairments meet or medically equal Listing 1.04A

for "disorders of the spine."  *Id.* at *11.  The ALJ there simply stated "The

claimant does not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments...."  *Id.*  The court noted that the

ALJ explicitly found that plaintiff suffers from degenerative disc disease and

cervical spondylosis, and thus "should have considered and discussed [plaintiff's]

impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes

legal error."  *Id.* at *12.

First, because the ALJ found that plaintiff's HIV and depression were not severe impairments at Step Two, she was not required to perform a Step Three analysis of those impairments.  *See*, *e.g.*, *Jones v. Astrue*, 2013 WL 5487416, at *3 (S.D. Ohio Sept. 29, 2013) ("[A] finding that Plaintiff suffered from a 'severe' impairment at Step 2 of the sequential analysis is a prerequisite to determining whether Plaintiff's impairment met or equaled a Listed impairment at Step 3."); *Smith-Johnson v. Comm'r of Soc. Sec.*, 2012 WL 7784979, at *6 (E.D. Mich. Dec. 14, 2012) ("Requiring the ALJ to perform a Step Three analysis of every finding in the transcript . . . is not required by either the Social Security Regulations or case law.") (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496 (6th Cir. 2006)), *adopted by* 2013 WL 1187031 (E.D. Mich. Mar. 21, 2013); *Banks v. Astrue*, 2011 WL 3608027, at *7 (E.D. Ky. Aug. 16, 2011) (because the ALJ ended his analysis at Step Two after finding that plaintiff's impairment was not severe, "the ALJ did not need to consider whether Plaintiff's impairment met the definitions in the Listing of Impairments").  Thus, because the undersigned has concluded that substantial evidence supports the ALJ's finding that plaintiff's HIV and depression are not "severe" impairments, the ALJ did not err in not making a determination as to whether these two impairments met or equaled a Listing.

However, because a showing that an impairment meets the definition set forth in the Listing of Impairments can prove a plaintiff should have advanced

31

beyond Step Two, the undersigned will consider whether plaintiff meets the

criteria. *See Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151

(6th Cir. 1986) ("[A]ny impairment that meets the criteria in the Listing of

Impairments can hardly be classified as non-severe.").  As the *Williamson* court

explained:

> [I]f a court's reading of the record should reveal that the
> listing's criteria are satisfied according to valid tests and
> credible reports, an ALJ's finding of no severe
> impairment at step two cannot be found to be supported
> by substantial evidence.  We do not mean to reorder the
> sequential process to require that the ALJ consider
> whether a claimant's impairment meets the listing before
> deciding whether the impairment is severe; we merely
> conclude that a finding of non-severity at step two
> cannot be supported by substantial evidence when it
> appears that the listed criteria are met.

*Id.*

First, plaintiff has wholly failed to offer any evidence to support his broad

contention that the ALJ should have found at Step Three that his HIV satisfies the

criteria of Listing 14.08 (or any other listed impairment for that matter).[3]  *See Roby*

*v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) ("The claimant has

the burden at the third step of the sequential evaluation to establish that he meets

---

[3] To meet or equal a 14.08 listing, a claimant must suffer from HIV, and demonstrate one
of a number of symptoms and limitations, including a bacterial or viral infection, malignant
neoplasms, cognitive or motor dysfunction, wasting syndrome, or the infection plus a series of
limitations in activities of daily functioning.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1408.

or equals a listed impairment.") (internal citations omitted).  Although plaintiff criticizes the ALJ for not providing enough detail in his discussion, plaintiff does not even attempt to explain why he believes his HIV meets or medically equals the criteria of Listing.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria." *Sullivan v. Zebely*, 493 U.S. 521, 530 (1990) (emphasis in original).  Here, where plaintiff has failed to proffer any evidence that his HIV meets or medically equals the criteria of a listed impairment, and where substantial evidence supports the ALJ's determination that his HIV is not a severe impairment because plaintiff has been consistently diagnosed as asymptomatic and his condition stable, he has not shown that the ALJ erred.  *See Hudson v. Comm'r of Soc. Sec.*, 2013 WL 5372801, at *18 (E.D. Mich. Sept. 25, 2013) (noting plaintiff failed to put forth any evidence to show why the ALJ was wrong, or why she met any part of the 14.08 listing conditions).

Similarly, plaintiff has failed to offer any evidence to support his contention that his depression meets or equals Listing 12.04.  Listing 12.04 has three lettered paragraphs and states that a claimant must satisfy the requirements of both paragraphs A (which lists specific medical findings) and B (which lists specific impairment-related functional limitations), or only the requirements of C (which describes conditions that would permit the ALJ to presume that the claimant cannot work without the need for determining the existence of specific symptoms).

To satisfy paragraph B, the claimant's mental disorder must result in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistent or pace; or (4) repeated episodes of decompensation, each of extended duration.  Paragraph C requires a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, and (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause decompensation; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  The reviewing psychologist who completed plaintiff's PRTF opined that plaintiff had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence, or pace–not the "marked" or "extreme" levels required to meet or equal the Listing–and no episodes of decompensation. (Tr. 72).  And the consulting psychologist opined that plaintiff's ability to understand and carry out simple directions is not impaired, that he responds to instructions and positive criticism well, and was cooperative and verbally responsive, with logical,

34

organized, simple and concrete thought and good contact with reality. (Tr. 276-79). And plaintiff's treatment notes generally state that while plaintiff had a depressed mood, he was oriented, had intact judgment, logical and coherent thought processes, average concentration, fair to good insight, and average intellectual functioning, and that his medications were effective with no side effects. (Tr. 260-68, 495-530). There is simply no record evidence that would support a finding that plaintiff met or equaled Listing 12.04, and thus the ALJ's failure to specifically address this non-severe impairment at Step Three of the sequential evaluation is, at most, harmless error.

In contrast to plaintiff's HIV and depression, the ALJ here explicitly found that plaintiff suffers from lumbar disc disease, and that this impairment is severe, and thus she should have considered and discussed this impairment relative to Listing 1.04A. The ALJ's failure to do so constitutes legal error. *See M.G.*, 861 F. Supp.2d at 846; *see also Andrews*, 2013 WL 2200393, at *11-12. The court, however, will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G.*, 861 F. Supp.2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled...." *Id.*. at 861 (citation omitted, emphasis in original). This is because the Sixth Circuit "has consistently rejected a heightened

articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)).  As the *Staggs* court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis."  *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)).  Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [she] *would have* found the claimant not disabled."  *M.G.*, 861 F. Supp.2d at 861.  Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met.  *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").

Here, in order for plaintiff to meet the criteria of Listing 1.04A, he must show that he has a disorder of the spine with:

> Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss
> and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.  It is well-settled that to "meet"

a listing, a claimant's impairments must satisfy each and every element of the

listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec.

Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004).  Even if plaintiff cannot demonstrate

that he meets the criteria of Listing 1.04A, however, he can still satisfy his burden

at Step Three by proving that he has an impairment (or combination of

impairments) that medically equals this Listing.  To do so, he must "present

medical evidence that describes how his impairment is equivalent to a listed

impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir.

2004).  This means that plaintiff must present medical findings showing symptoms

or diagnoses equal in severity and duration "to *all* the criteria for the one most

similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868,

874 (6th Cir. 2003).

In this case, the ALJ concluded that plaintiff has lumbar disc disease, and

acknowledged that there is evidence of nerve root compression: a May 2010 MRI

of plaintiff's lumbar spine showed "[l]arge right paracentral disc extrusion with

inflammatory component, causing severe compression of the descending right S1 nerve roots," and "left foraminal and far lateral disc protrusion at L3-4 level and right foraminal and far lateral disc protrusion at L4-5 level with probable mild compression of the exiting left L3 and right L4 nerve roots respectively." (Tr. 16-18, 258-59). However, plaintiff has not offered any evidence that he satisfies the remaining criteria of Listing 1.04A for muscle weakness and/or motor and sensory deficits and reflex abnormalities. It was noted on examination that plaintiff's strength, sensation and reflexes are normal, straight leg raising was negative, and the neurologist concluded that plaintiff has a radiographic lumbosacral herniation without any sign of radiculopathy or nerve compression syndrome. (Tr. 290-91). The ALJ noted that a November 2011 consultative physical examination revealed no spasm, tenderness or restricted range of motion in plaintiff's lumbar region, plaintiff ambulated with a steady gait, had 5/5 muscle strength, unimpaired sensation, and that the doctor concluded that plaintiff could sit, stand, walk, bend, lift 10 pounds, and overall, work an 8-hour day. (Tr. 17, citing Tr. 269-75). The ALJ further noted that progress notes dated through May 2012 showed intact sensation, motor strength, gait and coordination, and that plaintiff's back symptoms were relieved by pain medication. (Tr. 17, 353, 357, 372, 376, 404, 407, 412-13). Indeed, as the Commissioner points out, plaintiff has failed to identify any clinical evidence that he had the motor and sensory deficits required

to satisfy the Listing. In addition, as the Commissioner points out, although not explicitly recognized by the ALJ, the record contains the opinion of Dr. Michael Parish, who reviewed plaintiff's medical records and opined that there was "no evidence that he [could] meet or equal a listing." (Tr. 59). Plaintiff offers no record evidence to support his contention that the ALJ should have found at Step Three that his lumbar impairment satisfies the criteria of Listing 1.04A (or any other listed impairment for that matter). *See Roby*, 48 Fed. Appx. at 536 ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted). Accordingly, although the ALJ did not provide an extensive discussion of whether plaintiff's impairments met or equaled a listing, any error is harmless because a review of the ALJ's decision and the record shows that even if the ALJ had made the required findings, he would have found plaintiff not disabled. Accordingly, plaintiff's claims of error should be denied.

### 3.    The Credibility Analysis

Plaintiff argues that the ALJ erred in evaluating plaintiff's credibility. Specifically, plaintiff contends that the ALJ never discusses his reasoning for rejecting plaintiff's credibility but simply makes conclusory statements using boilerplate language in her decision. As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms

will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929.

Instead, the Sixth Circuit has repeatedly held that "subjective complaints may

support a finding of disability only where objective medical evidence confirms the

severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105

Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175,

1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective

allegations, the ALJ's personal observations, and the objective medical evidence

contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass

upon the credibility of the witnesses and weigh and evaluate their testimony."

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers

v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  As the Sixth Circuit has

held, determinations of credibility related to subjective complaints of pain rest

with the ALJ because "the ALJ's opportunity to observe the demeanor of the

claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of

Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).

Thus, an ALJ's credibility determination will not be disturbed "absent compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not

required to accept the testimony of a claimant if it conflicts with medical reports,

40

the claimant's prior statements, the claimant's daily activities, and other evidence

in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997).  Rather, when a complaint of pain or other symptoms is in issue, after the

ALJ finds a medical condition that could reasonably be expected to produce the

claimant's alleged symptoms, he must consider "the entire case record, including

the objective medical evidence, statements and other information provided by

treating or examining physicians . . . and any other relevant evidence in the case

record" to determine if the claimant's claims regarding the level of his pain are

credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R.

§§ 404.1529, 416.929.  Consistency between the plaintiff's subjective complaints

and the record evidence 'tends to support the credibility of the [plaintiff], while

inconsistency, although not necessarily defeating, should have the opposite

effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).

The undersigned concludes that the ALJ's finding that the objective record

evidence did not support plaintiff's claims of disabling limitations is supported by

substantial evidence.  Here, as discussed above, the ALJ considered plaintiff's

allegations in light of the other evidence in the record and sufficiently explained

how plaintiff's allegations were inconsistent with the record evidence as follows:

The claimant was not very credible at the hearing.  His

> testimony of sciatic back pain is not adequately
> corroborated by the record, which reflects improvement
> with conservative therapy, surgery not being necessary.
> His other impairments, including HIV, high blood
> pressure, and depression, all are stable with the
> appropriate treatment, and the evidence does not comport
> with debilitating side effects.  Furthermore his statement
> that he lives with a friend and has few daily living
> activities is somewhat contradicted by the consultative
> psychological report which notes that he can live alone
> and perform the activities described above.  Overall, the
> consultative exhibits are quite probative and not
> inconsistent with the rest of the medical [record], and the
> undersigned is persuaded to give them considerable
> weight.  Accordingly, the undersigned finds that the
> claimant's deficits in combination would not prevent
> simple, unskilled sedentary exertional work with few
> changes in work routine and no fast-paced production.

(Tr. 19).

The undersigned concludes that the ALJ's credibility findings were both

well explained and well supported.  The ALJ properly noted in her decision that

the objective record evidence was inconsistent with plaintiff's claims of disabling

pain–his pain was considered not to be severe and he was treated conservatively

with physical therapy and medication, progress notes through May 2012 show that

plaintiff's symptoms were relieved by pain medication, and a November 2011

consultative physical examination showed no spasm, tenderness or restricted range

of motion of plaintiff's lumbar region, he ambulated with a steady gait, and his

muscles strength was 5/5 and sensation unimpaired.  (Tr. 17-19, 269-75).  Plaintiff

also complains that the ALJ did not credit his testimony as to disabling side effects of medications, but fails to offer any record evidence in support of such testimony. A claimant asserting debilitating medicinal side effects must present objective medical evidence to support his claim. *See Farhat v. Sec'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 174540, at *3 (6th Cir. July 24, 1992) (unpublished) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986)). Plaintiff has not pointed to any objective medical evidence to support his assertion of disabling side effects of his medication. Indeed, the record indicates that plaintiff reported to his treating physician that his medications were effective and he reported no side effects. (Tr. 266, 268). And, as for his activities of daily living, the ALJ properly noted that plaintiff's testimony of very limited daily activities was inconsistent with his statements to the consulting physician, where he reported that he does a fair job with housekeeping, does laundry, cashes checks and pays bills, completes his own grooming and hygiene, watches TV, shops, completes errands, makes medical appointments and cooks simple meals. (Tr. 277). Plaintiff similarly reported to his treating therapist that he is able to complete his activities of daily living without assistance and that he enjoys playing cards, watching movies, going out to eat and traveling. (Tr. 500). The ALJ properly could consider such evidence in assessing plaintiff's credibility. *See Walters*, 127 F.3d at 531.

43

Therefore, the ALJ credited the physicians' assessments and diagnoses, evaluated the extent to which the severity of plaintiff's pain and other symptoms could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of pain and symptoms not fully credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. The undersigned concludes that there is substantial evidence in the record to support the ALJ's credibility findings and conclusion that plaintiff's impairments do not preclude him from performing the identified jobs.

Because the ALJ reached her decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6tyh Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

44

2:13-cv-11637-PJD-MJH   Doc # 12   Filed 06/30/14   Pg 45 of 46   Pg ID 662

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 30, 2014                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 30, 2014, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Joshua L. Moore, Russell Cohen and Vanessa Miree
Mays.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov